FILED

*IN THE UNITED STATES DISTRICT COURT* 2008 APR 11 P 3:51

*NORTHERN DISTRICT OF CALIFORNIA*

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

EDMUND ASBURY,                         ) Case No. _
                                       )
            Petitioner,                ) [Cal. Supreme Court, Case No. S160777
                                       ) Commitment Offense: Los Angeles
        -vs-                           ) County Sup. Ct. Case # A142680]
                                       )
BEN CURRY, Warden,      ADR            )
                                       )
            Respondent,                )
                                       )
        On Habeas Corpus.              ) C08  01946
                                       )
                                       )           SBA
BOARD OF PAROLE HEARINGS,              )
ARNOLD SCHWARZENEGGER,                 )
Governor,                              )
                                       )
            Real Parties in Interest.  )
                                       )
_____)


### *PETITION FOR WRIT OF HABEAS CORPUS*

STEVE M. DEFILIPPIS, ESQ.
State Bar #117292
PICONE & DEFILIPPIS, APLC
625 North First Street
San Jose, CA 95112
(408) 292-0441

Attorneys for Petitioner,
EDMUND ASBURY

TABLE OF CONTENTS...................................................................i

TABLE OF AUTHORITIES.............................................................ii

JURISDICTION........................................................................2

INTRODUCTION.......................................................................3

STATEMENT OF FACTS..............................................................7

HISTORY OF BOARD HEARINGS...................................................10

LEGAL ARGUMENT.................................................................11

REQUEST FOR EVIDENTIARY HEARING.........................................17

SUPPORTING EXHIBITS............................................................18

PRAYER FOR RELIEF...............................................................19

VERIFICATION.......................................................................20

1

2    **Federal Cases**

3    Apprendi v. New Jersey, 530 U.S. 466 (2000)                                      17

4    Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003)                                6, 9, 13

5    Blakely v. Washington, 542 U.S. 296 (2004)                                      17

6    Board of Pardons v. Allen, 482 U.S. 369, 376-78 (1987)                        8, 15

7    Carey v. Saffold, 536 U.S. 214, 221-223 (2002)                                    4

8    Courts. See Brown v. Kane (2007 N.D.Cal.) ___F.Supp.2d ___ [2007 WL 1288448]    6

9    Graynet v. City of Rockford, 408 U.S. 104, 108-109 (1972)                      14

10   Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 11-12 (1979)   8, 15

11   Little v. Hadden, 504 F.Supp. 558, 562 (1980)                                    6

12   Martin v. Marshall (2006 N.D.Cal.) 431 F.Supp.2d 1038                          6, 16

13   McQuillion v. Duncan (McQuillion I) 306 F.3d 895, 901 (9th Cir. 2002)    9, 11, 13, 15

14   Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999)                              4

15   Rosenkrantz v. Marsahll [Rosenkrantz VI], 444 F.Supp.2d 1063 (2006 C.D.Cal.)   6, 16

16   Sanchez v. Kane, 444 F.Supp.2d 1049 (2006 N.D.Cal.)                            6, 16

17   United States v. Guagliardo, 278 F.3d 868, 872 (9th Cir. 2002)               13, 14

18   Wolff v. McDonnell, 415 U.S. 558 (1974)                                        15

19   **State Cases**

20   In re Barker, 151 Cal.App.4th 346                                                6

21   In re Dannenberg, 34 Cal.4th 1061 (2005)                                        16

22   In re Elkins, 144 Cal.App.4th 475 (2006)                                       6, 16

23   In re Gray, 151 Cal.App.4th 379                                                  6

24   In re Lee, 143 Cal.App.4th 1400, 1409 (2006)                                   6, 16

25   In re Morrall, 102 Cal.App.4th 280 (2002)                                       13

26   In re Ramirez , 94 Cal. App. 4th 549(2001)                                     6, 19

27   In re Ramirez, supra, 94 Cal.App.4th 549                                     12, 13, 15

28   In re Rodriguez, 14 Cal.3d 639 (1975)                                        12, 14, 17

ii

In re Scott [Scott II], 133 Cal.App.3d 573, 594-595 (2005)    6

In re Scott, 133 Cal.App.4th 573, 594 (2005)    7, 16

In re Smith, 114 Cal.App.4th 343, 372 (2003)    7

People v. Schueren, 10 Cal.3d 553, 561 (1971)    16

**Statutes**

18 USC §2254    4

28 U.S.C. § 2254    4, 18

Penal Code §2402(c)    16

Penal Code §3041    passim

Penal Code §3041(a)    passim

STEVE M. DEFILIPPIS, ESQ.
State Bar #117292
PICONE & DEFILIPPIS, APLC
625 North First Street
San Jose, CA  95112
(408) 292-0441


Attorneys for Petitioner,
EDMUND ASBURY


### IN THE UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA


EDMUND ASBURY,

        Petitioner,

        -vs-

BEN CURRY, Warden,

        Respondent,

        On Habeas Corpus.

_____

BOARD OF PAROLE HEARINGS,[1]
ARNOLD SCHWARZENEGGER,
Governor,

        Real Parties in Interest.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _

[Commitment Offense: Los Angeles
County Sup. Ct. Case # A142680]

***PETITION FOR WRIT OF
HABEAS CORPUS***

---

[1] Note that a recent enactment by the Legislature and Governor, effective 7/1/05, changed the Board of Prison Terms' name to ***Board of Parole Hearings***. The new Board is comprised of Governor-appointed Commissioners who will hear all parole matters, both juvenile and adult. Individual Commissioners, however, are appointed to hear either adult or juvenile cases, so the day-to-day procedures for the determination of parole of adult, indeterminate-term offenders is virtually unchanged.

1

Petitioner, EDMUND ASBURY, a state prison inmate, by and through his attorney, Steve M. Defilippis, hereby petitions this Honorable Court for a writ of habeas corpus ordering his discharge from state prison, or alternatively, compelling the Board of Prison Terms (Board) to conduct a parole consideration hearing and order him released from prison. In support of this verified petition, Mr. Asbury respectfully alleges the following:

### *JURISDICTION*

This petition is addressed to this Court's original habeas corpus jurisdiction because the issues raised are of Federal Constitutional dimension, questioning the legality of the Petitioner's confinement and any subsequent release on parole, pursuant to 28 *United States Code [USC]* § 2254. On April 9, 2008, Petitioner exhausted his state remedies when the California Supreme Court's denial of review became final. No other federal challenge has been filed to the 2005 Board hearing that is at issue herein with this Court. Mr. Asbury filed a Petition for Writ of Habeas Corpus in the Los Angeles County Superior Court on February 10, 2006. His petition was subsequently denied on August 6, 2007. In denying Mr. Asbury's petition, the court failed to address the arguments made by Petitioner and simply denied the petition by reciting the circumstances of the offense, without any further explanation or evaluation of his exemplary rehabilitation and without providing a nexus between Mr. Asbury, *twenty eight (28) years after* the commitment offense and the allegation that he currently poses a risk of danger if released. Exh. O. Subsequently, Mr. Asbury filed a writ of habeas corpus in the California Court of Appeal, Second District on November 2, 2007, and a summary denial was issued on February 1, 2008. Exh. O. On February 11, 2008, Mr. Asbury filed a timely Petition for Review with the California Supreme Court. The Petition was summarily denied on April 9, 2008. Exh. Q. These decisions fail to follow clearly established federal law, as articulated by the United States Supreme Court, and were based on rulings that were made upon a deficient and literally non-existent fact finding process. As such, the ruling by the state courts resulted in patently arbitrary, unreasonable and wrong findings when applied to the applicable principles of clearly established federal law, in violation of Fourteenth

2

1
2
3

Amendment Due Process protections. Thus, this petition is cognizable under federal question jurisdiction, pursuant to 28 *U.S.C.* § 2254, and is timely filed under those same provisions.[2]

## INTRODUCTION

4
5
6
7
8
9
10
11
12
13
14
15

This case arises out of the eighth denial of parole to Edmund Asbury, a state prison inmate who, following his second degree murder conviction has spent well over twenty eight (28) years proving himself worthy of parole in every respect possible. However, despite Mr. Asbury's personal, vocational and educational accomplishments the Board has repeatedly failed to fix Mr. Asbury's term and set a release date in compliance with *Penal Code* §3041(a). The Board has wholly ignored Mr. Asbury's incredible transformation, dismissing without consideration the evidence establishing that he no longer poses an unreasonable risk of harm to society if paroled. *California Code of Regulations*, Tit. 15, §2402(a) (hereafter *Cal. Code Regs.*).    Here, Petitioner does not in any way challenge his underlying conviction, but only the Board's continued denial of parole.

16
17
18
19
20
21
22
23
24
25

Mr. Asbury was 28 years old with a serious history of alcohol abuse when he committed the instant offense. Numerous psychological evaluations document the role that Mr. Asbury's heavily intoxicated state, rather than violent nature, played in the commission of the instant offense. Mr. Asbury does not use his alcohol addiction as an attempt to excuse his behavior. Rather, he accepts full responsibility for his actions and is driven by remorse to remain substance free. Over the last twenty eight (28) years in custody Mr. Asbury has matured significantly. Through therapy, self-help and substance abuse participation, he has dedicated himself to preparing to become a productive member of society when released. The tragic circumstances that lead to the death of Mr. Jackson, the victim, cannot be altered. However, the focus of this Court's attention must be on who Mr. Asbury is today, whether he received a fair hearing by the Board panel in

26
27
28

---

[2] Pursuant to *Carey v. Saffold*, 536 U.S. 214, 221-223 (2002) and *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999), all time is tolled from the filing of the first state habeas petition through the denial by the California Supreme Court.

2005, and whether that Board panel had any evidence to support its finding that Mr. Asbury "currently" poses a danger to the public as required under *Penal Code* §3041.

Mr. Asbury is not challenging his underlying conviction. He does, however, challenge the Board's violation of his constitutional right to due process in the fact, manner, and method of the Board's refusal to set a parole date at his parole suitability hearing on January 5, 2005. The 2005 denial was Mr. Asbury's *eighth* denial of parole suitability and the *eighth* failure by the Board to properly set a parole date as required by *Penal Code* §3041(a). His 2005 denial followed the completion of all recommendations set forth by the 2001 Board panel. That, as well as the total lack of evidence of future dangerousness, demonstrates an utter failure by the parole system and a clear infringement of Mr. Asbury's due process rights as he is being denied parole release solely on the immutable facts of the commitment offense. See *Little v. Hadden*, 504 F.Supp. 558, 562 (1980) [("It is simply irrational for seriousness of the offense to be used first to determine the appropriate [matrix] period [to be served] and then to be used again as the stated reason for confining a person beyond that guideline." (citations omitted)]); see also *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003) [(In the face of evidence of rehabilitation, where the inmate does not demonstrate a continuing danger, it is a violation of due process to deny parole based on factors that will never change)]; see also *In re Ramirez*[3], 94 Cal. App. 4th 549(2001).

The situation here is quite similar to that found in *Biggs, supra,* 334 F.3d 910, and the subsequent published decisions in the state and federal Courts. See *Brown v. Kane* (2007 N.D.Cal.) ___F.Supp.2d ___ [2007 WL 1288448] slip opn., at p. 6, *Martin v. Marshall (2006 N.D.Cal.)* 431 F.Supp.2d 1038, *Sanchez v. Kane,* 444 F.Supp.2d 1049 (2006 N.D.Cal.), *Rosenkrantz v. Marsahll [Rosenkrantz VI],* 444 F.Supp.2d 1063 (2006 C.D.Cal.) , *In re Scott [Scott II],* 133 Cal.App.3d 573, 594-595 (2005), *In re Lee,* 143

---

[3] The California Supreme Court disapproved only that portion of the *Ramirez* decision that requires a comparative, proportionality analysis of a crime with other similar offenses. The balance of the *Ramirez* decision was not overruled. However, it is Petitioner's contention that under principles of Federal Due Process, the analysis in *Ramirez* is correct and a comparative/proportionality analysis is not only proper, but is Constitutionally required.

4

Cal.App.4th 1400, 1409 (2006), *In re Elkins,* 144 Cal.App.4th 475 (2006), *In re Barker,* 151 Cal.App.4th 346 [59 Cal.Rptr.3d 746, at 760] (2007), and *In re Gray,* 151 Cal.App.4th 379 [59 Cal.Rptr.3d 724] (2007).   In these cases, the courts have unanimously concluded that the continued use of immutable factors to deny parole (e.g. the commitment offense itself and pre-incarceration factors) without any real evidence of current dangerousness violates due process.    As was pointed out by the Court of Appeal, First District, "[r]eliance on such an immutable factor 'without regard to or consideration of subsequent circumstances' may be unfair." *In re Scott,* 133 Cal.App.4th 573, 594 (2005) hereinafter "*Scott II*" [citing *In re Smith*, 114 Cal.App.4th 343, 372 (2003)].    These cases demonstrate that the focus in any parole consideration hearing must be whether there is any evidence showing that the inmate currently presents an unreasonable risk of danger to the public if paroled.  Here there was no such evidence.

Furthermore, these courts have recognized that a prisoner who has committed an offense which carries a sentence of life with the possibility of parole has a constitutional right to be paroled, recognizing that the purpose of incarceration for indeterminately-sentenced prisoners in California, such as Mr. Asbury, is to rehabilitate the individual and release him back into society without posing an unreasonable risk to the public.  Mr. Asbury presents a case where the facts exemplify readiness for release into society.  Mr. Asbury has worked hard over the past twenty eight (28) years to prepare himself for release.   He is precisely the type of individual, under California's indeterminate-sentencing scheme, entitled to a release date.   Additionally, the 2005 Board failed to recognize Mr. Asbury's fervid work in completing all of the prior Board panel's recommendations as set forth in his *seven* prior denials.   This is an obvious attempt to treat Mr. Asbury as though he had sentenced to life without the possibility of parole, despite his actual sentence.

Mr. Asbury's academic accomplishments are notable.   While incarcerated Mr. Asbury received his GED and completed college units in various courses including: Business Institute, Starting a New Enterprise, Oral Communication, Written Communication, General Math, Introduction to Computers, Skilled Business Manages,

5

Business Law, and Business Math. According to the Board's records, Mr. Asbury received A's and had a GPA of 4.0. Mr. Asbury's vocational accomplishments include participation in courses on small engine operations and serve manual, computer refurbishing, and minor PC Upgrading. Mr. Asbury worked as a teacher's aide in the Vocational Computer Repair program until that program was suspended. He is currently on the waiting list for another position as a teacher's aide. Mr. Asbury has also used his time of incarceration to better himself and prepare for a productive life in society by participating in various treatment programs including Alcoholics Anonymous, numerous self-help groups, and individual therapy with Dr. Meyer in 1989. Mr. Asbury has participated in AA throughout his twenty eight (28) years, however due to overcrowding and limited meetings, he has been unable to attend regularly. He has supplemented the program by purchasing a 12 step book, which he reads and journals to assist him in his sobriety. Mr. Asbury's dedication to sobriety is stalwart, as evidenced by his complete abstinence.

The Board itself stated that Mr. Asbury's Psychological Report dated July 12, 2004 supports release.[4] Mr. Asbury has proven himself worthy of a release date pursuant to *Penal Code* §3041, however, despite the absence of any evidence other than the immutable offense characteristics, on January 5, 2005 the Board again denied Mr. Asbury's *eighth* application for a parole release date.

The State Legislature enacted the Uniform Determinate Sentencing Act (commonly known as the Determinate Sentence Law [DSL]), provides that the Board of Prison Terms "*shall normally* set a parole release date" for state prison inmates serving indeterminate sentences (life with possibility of parole and term-to-life), and must do so *at the initial parole hearing*. (*Penal Code* §3041(a), emphasis added.) The United States Supreme Court has determined that a state's statutory parole scheme, if it uses mandatory

---

[4] The Board stated that they had "concerns" regarding the report. These "concerns" related to minor discrepancies regarding the actual number of college units and certifications completed by Mr. Asbury. These discrepancies are wholly arbitrary and have no relation to whether Mr. Asbury currently poses an unreasonable risk of danger if released. *Cal. Code Regs.*, tit. 15, §2402(a).

language, creates a presumption that parole release will be granted upon certain conditions. This presumption gives rise to a constitutionally protected liberty interest. *Board of Pardons v. Allen,* 482 U.S. 369, 376-78 (1987); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex,* 442 U.S. 1, 11-12 (1979). Thus, a prisoner gains a legitimate expectation in parole that cannot be denied without adequate procedural due process when certain language is used. *Allen, supra,* 482 U.S. at 373-81; *Greenholtz, supra,* 442 U.S. at 11-12. *Penal Code* §3041's mandatory language creates a presumption that the inmate will have a parole release date set at that first hearing. *McQuillion v. Duncan (McQuillion I)* 306 F.3d 895, 901 (9th Cir. 2002) ["The scheme creates a presumption that parole release will be granted"]; *Biggs v. Terhune,* 334 F.3d 910, 915-916 (9th Cir. 2002) ["[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate"].

Yet, the Board routinely ignores these rules, as they did here, by repeatedly denying Mr. Asbury a parole release date, thereby causing him to remain in custody for a period of time significantly outside the matrix designated for his crime.[5]  As such, he is entitled to relief.

### STATEMENT OF FACTS

### I.

Petitioner, Edmund Asbury, is illegally confined and restrained of his liberty by Ben Curry, Warden, Correctional Training Facility– Soledad, part of the Department of Corrections and Rehabilitation. Real Parties in Interest, the Board of Parole Hearings and Governor Arnold Schwarzenegger, are the paroling authority of the State of California responsible for the failure to set a release date for the Petitioner. Mr. Asbury was tried

---

[5] The matrix for Petitioners crime should be 19-20-21 years, which with post commitment credits would actually be a term of fifteen (15) years nine (9) months. Petitioner had 2934 days total pre prison credit, or approximately 98 months. (App. A, Exh. A p. 3.) Even applying the high end of the matrix, 252 months, taking into consideration his pre-prison credit, Petitioner should have served no more than 153 months, or 12 years 9 months, from reception. (252 months minus his pre-prison credits). Petitioner has served the equivalent of one month shy of forty (40) years (23 years 10 months from his 6/13/84 reception to now, plus his 8 years and 2 months pre-prison credits and 7 years 11 months post-commitment credit). Even as of the 2005 Board hearing, Petitioner had served over *15 years* above his designated matrix, and is now 19 years over.

7

three times for this set of facts and is currently serving an indeterminate sentence of 16 years-to-life,[6] after a third trial resulted in jury finding of second-degree murder for the May 1979 death of John Jackson.

## II.

A detailed Statement of Facts is included in the accompanying Memorandum of Points and Authorities. The same is incorporated herein by reference as though set forth in full. The reader's attention is directed to the attached Points and Authorities for a full understanding of the background of these matters. The factual matters will not be repeated in detail in this petition, but briefly touched upon.

## III.

Mr. Asbury's actions were the result of the effects of alcoholism, a recognized disease under the Americans With Disabilities Act (ADA), from which he suffered. The evidence irrefutably shows that during the time of this offense Mr. Asbury was an alcoholic. His blood alcohol level tested .14 percent at the time he was arrested, hours after the crime. He used alcohol on a daily basis, frequently drinking as much as a gallon of vodka and a case of beer a day. Mr. Asbury's involvement in the instant offense presents a clear example of the effects of his alcohol abuse. Although his alcohol abuse is not an excuse for his actions, it does help explain his uncharacteristically violent behavior on the date of this incident. The trial judge who presided over Mr. Asbury's trial, Judge Darlene Schempp, wrote to the Board in 1988 stating, "[t]his violent conduct was the result of an alcoholic episode. When not under the influence of alcohol, Mr. Asbury no doubt could be a responsible citizen." (Exh. H, p. 366.)

## IV.

Mr. Asbury was tried three times upon the facts of this offense. At the third trial Mr. Asbury was convicted of second degree (implied malice) murder, and was sentenced to 15 years-to-life plus one year for the use of a deadly weapon, the term prescribed by law. Mr. Asbury was received by the CDC on June 13, 1984 where his Minimum Term

---

[6] Petitioner was sentenced to 15-to-life for the murder plus a one year enhancement for the use of a deadly weapon.

was calculated as February 1, 1990. As demonstrated throughout Mr. Asbury's central file, over the past 20 years he has abandoned his former behavior and the abuse of alcohol. He has made significant progress personally, educationally and vocationally, accomplishing the type of rehabilitation which the Department of Corrections espouses for its wards.

V.

Records from Mr. Asbury's term of incarceration enumerate his copious accomplishments. Over the years, his behavior has improved markedly. Mr. Asbury has not received a single disciplinary write-up since 1993, a period of now fifteen (15) years. These improvements and accomplishments have been documented in Post-conviction Progress Reports and by evaluating mental health professionals in their Life Prisoner Evaluation reports. At Mr. Asbury's 2005 parole suitability hearing, the Board Panel denied a parole release date for the *eighth* time, despite the lack of any evidence of current dangerousness and his documented rehabilitation.

VI.

The Board of Prison Terms derives its authority to make parole suitability determinations from the California State Legislature under *Penal Code* §3041 That section creates a presumption that a prisoner will have a parole release date set *at his initial hearing*. *McQuillion I, supra*, 306 F.3d at 901, ["The scheme creates a presumption that parole release will be granted"], emphasis added; see also *Penal Code* §3041(a) ["One year prior to the inmate's minimum eligible parole release date a panel...of the Board of Prison Terms shall again meet with the inmate and shall *normally* set a parole release date..."], emphasis added. Through an apparent unconstitutional interpretation or application of *Penal Code* §3041, however, the Board has adopted a policy of denying parole to virtually all term-to-life inmates rather than "normally" setting a release date. (See generally Exh. I.)

9

### *HISTORY OF BOARD HEARINGS*

### VII.

Pursuant to *Penal Code* §3041(a), Mr. Asbury's initial parole hearing was held January 17, 1989. At that hearing he was denied the setting of a parole date. Mr. Asbury was again denied in 1991, 1992, 1994, 1996, 1999, 2001, and 2005. These denials are explained fully in the Statement of Facts in the accompanying Points and Authorities. The 2001 Board denied Mr. Asbury for two (2) years, thus making him eligible for a subsequent hearing in 2003. (See App., Exh. A, 109). Mr. Asbury never received that hearing. The failure to provide Mr. Asbury with his 2003 hearing demonstrates the arbitrariness with which the Board functions. Mr. Asbury has been subjected to what the court in *In re Ramirez, supra,* 94 Cal.App.4th 549, referred to as a "sham." Despite the complete lack of evidence to support a finding that Mr. Asbury poses a current threat to the public, the 2005 Board refused to set a parole release date as required by *Penal Code* §3041(a) and *In re Rodriguez,* 14 Cal.3d 639 (1975).

### VIII.

The 2005 Board Panel made a finding that the immutable facts of this crime could continually support the denial of a parole date. As a matter of law, Mr. Asbury's culpability cannot be deemed to be more serious than second-degree murder, the crime of which he was convicted. Therefore, there was no premeditation or deliberation, and no acts beyond the minimum necessary to convict him of the crime. Therefore, the circumstances of this offense cannot support a finding that it was committed in an "especially heinous, atrocious or cruel manner" as required by Title 15 of the *California Code of Regulations*, section 2402(c), to deny parole without other evidence of current dangerousness.

### IX.

A finding of dangerousness is not authorized by the regulations in the instant case. The CDC itself has rated Mr. Asbury security threat at Medium A, Level II institutional housing since 1989. This is the lowest custody level permitted for indeterminate life-term prisoners. This level is prohibited for inmates deemed by the Department of

10

Corrections to possess of present a threat to the safety of others, or to have committed a crime involving "unusual violence." *Cal. Code Regs.*, tit. 15, §3375.2. Despite the recognition by the state's own Department of Correction that Mr. Asbury poses no security threat or threat of dangerousness, the Board, in contrast, ruled that he poses an unreasonable risk of danger to society and threat to the public.

### *LEGAL ARGUMENT*

### X.

*Penal Code* §3041 mandates that the Board shall set a parole release date at the prisoner's initial parole consideration hearing unless there is legitimate cause to believe the prisoner would pose a current unreasonable risk to public safety if released. See *Cal. Code Regs.*, tit. 15, §2402(a); see also *In re Morrall*, 102 Cal.App.4th 280 (2002) ["The law contemplates…it would be contrary to the statutory scheme to deny parole simply because the commitment offense was murder"]. Additionally, *Penal Code* §3041(a) mandates that terms set pursuant to that section be set forth in a manner providing uniformity in terms for offenses committed under similar circumstances. Pursuant to *Biggs, supra*, and *Hayward v. Marshall*, __F.3d___, 2008 WL 43716 (9th Cir. 2008), the sole reliance on the immutable factors of the commitment offense to deny parole violates federal due process. Based on this authority, Mr. Asbury had a legitimate expectation that a parole release date would be set, and that the length of his term would be determined in accordance with the guidelines for uniform terms for the circumstances of his culpability in the instant offense. *Penal Code* §3041; *Cal. Code Regs.*, Tit. 15 §§2400 et seq.; *In re Ramirez, supra*; and *McQuillion I, supra*, 306 F.3d 895, 902-903.

### XI.

These statutes gave Mr. Asbury an expectation that his parole date would be set at his initial hearing, in 1989. Obviously this did not occur as Mr. Asbury was denied a parole date at six subsequent suitability hearings prior to the instant denial in 2005. The State has a duty to inform Mr. Asbury of what conduct is expected of him to result in a grant of parole, and the Board has a duty to make those recommendations "sufficiently clear." *United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002), citing *Graynet v.*

*City of Rockford*, 408 U.S. 104, 108-109 (1972).[7]  The onus is on the State to clearly and specifically describe what conduct will warrant a finding of parole suitability so that the inmate may reasonably fulfill those recommendations.

In Mr. Asbury's 2001 denial the Board recommended that he remain disciplinary free, upgrade vocationally if available, and participate in self-help and therapy programs. (App. A, Exh. A, p. 106.)  These recommendations constitute the Board's "sufficiently clear" instructions indicating the behavior necessary to result in the grant of a future release date.    Mr. Asbury fulfilled all of these recommendations by remaining disciplinary free, as he has since 1993, completing numerous college courses, being assigned to the Vocational Computer Repair program as a teacher's aide, and participating in both Alcoholics Anonymous and Narcotics Anonymous.  (App. A, Exh. A, p. 10, see also App. A, Exh. C.)  Despite Mr. Asbury's total compliance with the recommendations of the 2001 Board Panel, at his parole hearing in 2005 the Board ignored.  Again recommending Mr. Asbury "remain disciplinary free" and, "when it is available to you that you participate in structured self-help." (App. A, Exh. B, p. 334.)  As Mr. Asbury fulfilled the 2001 Board's recommendations and yet was again denied a parole date it appears that the Board's directives are nothing more than artificial standards which cannot possibly be met.

### XII.

The Board in 2005 denied Mr. Asbury his liberty interest in a parole release date. By setting forth vague recommendations, with which compliance was inconsequential, the Board violated Mr. Asbury's right to due process. *Rodriguez, supra,* 14 Cal.3d 639, 654, fn. 18 ["Prompt term-fixing will not only serve to alleviate one of the causes of anxiety now affecting inmates, but will also prevent the intrusion of irrelevant, post-conviction factors into the determination of the punishment that is proportionate to the

---

[7] A prisoner's due process rights are violated if parole conditions are not made "sufficiently clear" so as to inform him of what conduct will result in his being returned to prison.  Likewise, the Board of Prison Terms has a duty to make recommendations for parole eligibility "sufficiently clear" so as to inform the inmate of conduct that will warrant a finding of suitability. See United *States v. Guagliardo, supra*, 278 F.3d 868.

offense of the particular inmate"].  In denying Mr. Asbury parole, the Board overlooked the extensive evidence supporting his suitability for parole and wholly ignored Mr. Asbury's compliance with the previous directives of the 2001 Board Panel.  Based upon his reliance on the terms set forth by the 2001 Board Panel Mr. Asbury undertook the substantial tasks requested by the Board in order to fulfill his portion of the contract with the government, thereby securing his liberty interest.  In light of these facts, the refusal to set a parole date at the 2005 hearing was a clear violation of Mr. Asbury's right to due process.

## XIII.

The provisions of *Cal. Code Regs.*, tit. 15 §2403(d), Matrix II-C sets a matrix term of 19-20-21 years, less post-conviction credits to be applied pursuant to *Cal. Code Regs.*, tit. 15 §2410.[8]  The circumstances of Mr. Asbury's offense are prescribed in the above referenced matrix and therefore he is entitled to have a future release date fixed consistent with those regulations.  That regulation provides the presumptive term for his offense, absent findings specifically made by the trier of fact at the time of conviction that justify taking the case outside the matrix.  (See Paragraph XVI, *infra*, for a discussion of this rule.)

## XIV.

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff v. McDonnell,* 415 U.S. 558 (1974).  Absent a factually supported showing that the inmate ***currently*** represents an unreasonable risk of danger to society, after a full and proper consideration of all relevant factors set forth in the parole statutes and regulations, there is no basis upon which parole can be denied. *Hayward v. Marshall, supra,* __F.3d___, 2008 WL 43716 (9th Cir. 2008); *Greenholtz v. Nebraska Penal Inmates* 442 U.S. 1, 12 (1979); *Board of Pardons v. Allen,* 482 U.S. 369, 376-378 (1987); *McQuillion I, supra,* 306 F.3d 895, 901; *In re Ramirez, supra,* 94 Cal.App.4th 549, 569;

---

[8] *Cal Code Regs.*, tit. 15 §2410 provides a normal award of post-conviction credits for prisoners serving indeterminate term sentences in the amount of four (4) months for every twelve (12) months served.  More credit may be awarded for "exceptional" performance during the incarceration period.

13

*Sanchez, supra,* 444 F.Supp.2d 1049; *Rosenkrantz VI, supra,* 444 F. Supp.2d 1063; *Martin, supra,* 431 F.Supp.2d 1038; *Elkins, supra,* 144 Cal.App.4th 475; and *Lee, supra,* 143 Cal.App.4th 1400 *Scott II, supra,* 133 Cal.App.4th at 597-595; *Cal. Pen. Code* §3041.[9]  That was precisely the situation with Mr. Asbury in this case. The Board's actions, and the subsequent failures to act by the California courts, have arbitrarily denied him these rights in contravention of due process of law.  The accompanying Points and Authorities describe in detail how Mr. Asbury, absent the immutable factors of the commitment offense, does not fall under any of the enumerated categories of unsuitability listed in *Penal Code* §2402(c).  Absent any factors placing Mr. Asbury into one of those enumerated categories of §2402(c) the Board abuses its discretion by failing to set a parole date.  This is a particularly egregious violation of Mr. Asbury's right to due process considering Mr. Asbury is expressly suitable for parole under the "Circumstances Tending to Show Suitability" set forth in *Cal. Code Regs.,* tit. 15 §2402(d).

## XV.

While *Penal Code* section 3041 is constitutionally valid on its face, the Board's application of the statutory and regulatory guidelines is such that it has allowed parole denial to become the rule.  This results in a violation of Mr. Asbury's right to due process of law, and renders the statute unconstitutional as applied. See *People v. Schueren,* 10 Cal.3d 553, 561 (1971) ["A statute valid on its face may be unconstitutionally applied (citations omitted)"].  Here, by refusing eight (8) times to set a parole release date based

---

[9] Even if the decision in *In re Dannenberg,* 34 Cal.4th 1061 (2005) is applicable, this expectation is not lessened nor removed by the ruling therein.  Regardless of the inadequacies of the standard enunciated by that court, at a minimum, the *Dannenberg* Court held that the Board must point to factors ***beyond*** the minimum elements of the crime before denying parole, and must be supported by competent evidence. *Id.* at p. 1084. Respondent filed petitions for review in both *Scott II* and *Elkins,* and also filed a request for depublication of *Scott II* and for a stay of the decision in *Elkins* to preclude the release of Elkins.  All of these requests were denied by the California Supreme Court in Case #S147840 (*Elkins*), and Case #138430 (*Scott II*), obviously showing the Court's acceptance of the rules announced in those cases.  Here, the Board has not and cannot point to factors beyond the minimum elements of first degree murder that can justify denying Mr. Asbury a parole date after twenty eight (28) years.

14

on the immutable factors of the crime itself, the Board has de facto converted Mr. Asbury's indeterminate sentence to a sentence of life without the possibility of parole.[10] The Board is prevented from doing this because Mr. Asbury was convicted of second-degree murder and sentenced, specifically, to 16 years to life.

## XVI.

In two recent United States Supreme Court decisions, our High Court has stated that the constitutional right to due process, and the right to a jury trial, requires that each and every fact used to increase the penalty for a crime must be alleged and found true by the trier of fact, be it by jury or a defendant's own admission of facts in a plea of guilty. *Apprendi v. New Jersey,* 530 U.S. 466 (2000); *Blakely v. Washington,* 542 U.S. 296 (2004). Here, the *Dannenberg* court acknowledges that the Board "shall normally" find an inmate suitable and set a proportionate term (i.e., a term set by the matrix) absent findings that make the crime particularly egregious within the meaning of the public safety exception of *Penal Code* §3041 (b). Thus, the findings referred to in *Dannenberg* take the case out of the "normal" sentencing range, within the meaning of the *Apprendi\Blakely* rule. As such, the findings necessary to effectuate that the result must be made by the trier of fact at the time of conviction.

## XVII.

Mr. Asbury exemplifies a prisoner who, although committed a serious crime, has now proven himself fully rehabilitated. He has fulfilled all prior Board Panel's recommendations to make himself suitable for parole. He has made significant advances personally, professionally and vocationally as documented above, and has a highly supportive and loving wife and community to return to, including living arrangements and employment upon his release. (App. A, Exh. C, pp. 338-341.) No reasonable reviewing court could have properly concluded that the Board's decision was lawful. In short, the fact finding and review processes of the Board and California courts were

---

[10] In *In re Rodriguez,* (1975) 14 Cal.3d 639, the Court held that when the Board fails to set a term at a prisoner's parole consideration hearing, the terms shall be deemed to have been fixed at its maximum. Therefore, under circumstances such as these, Mr. Asbury's term has, in effect, been fixed at the rest of his natural life or life without the possibility of parole.

wholly inadequate, and therefore, there is no presumption of correctness that attaches to any finding by the Board or those courts.

### XVIII.

Mr. Asbury has no other plain, speedy or adequate remedy in the ordinary course of the law. This petition is addressed to this Court's original habeas corpus jurisdiction because the issues raised are of constitutional dimension, questioning the legality of Petitioner's confinement where administrative remedies are no longer available. As of May 1, 2004, the Board of Prison Terms repealed the requirement that prisoners and parolees file administrative appeals concerning Board actions and decisions. (See *Cal. Code Regs.*, tit. 15, §§2050-2056.) Thus, there is no longer an administrative remedy available. After the hearing at issue became final, Petitioner filed a timely petition in the Superior Court of Los Angeles County on February 10, 2006. On August 6, 2007, that Court served by mail an order denying the petition, a true and accurate copy of which is attached hereto as Exhibit Q. Venue is proper in this court as Mr. Asbury is housed in Monterey County, within this District. This petition is timely under the A.E.D.P.A. statute of limitations. 28 *U.S.C.* § 2254. Thus, this matter is ripe for determination by this Court.

### XIX.

For as few as the past ten (10) years, the Board has received informal mandates from the current and former Governors to severely restrict, and ultimately eliminate, the granting of parole to persons convicted of parole eligible murders, even second-degree murders.[11] The result of these mandates is a de facto system where inmates who have received an indeterminate sentence, such as Mr. Asbury, have their sentences unconstitutionally converted to a term of life without the possibility of parole by the executive branch, through the auspices of the Board and Governor. This unconstitutional policy was most recently recognized by the Federal Court. See Exh. I, *Coleman v. Board*

---

[11] Petitioner has numerous documents supporting this position. Due to the large volume of information, Petitioner has chosen not to burden the court with said documents at this time. However, upon request from the Court, or upon the order of an evidentiary hearing, Petitioner is fully prepared to provide said documents.

*of Prison Terms*, Eastern Dist. CA, Case No. CIV S-96-0783 LKK, May 19, 2005.[12]  This unlawful system of sentence conversion occurs despite the state legislature's express statutory scheme which requires the Board set a term for each parole eligible individual. The de facto policy of the executive branch has been unconstitutionally used by the Board to effectively eliminate the setting of parole dates for individuals, such as Mr. Asbury, convicted of murder.  As a result, the Board's parole hearings have become a meaningless sham.  The Board has been criticized in this regard in published decision of the California Court of Appeals.  See *In re Ramirez, supra*, 94 Cal. App. 4th at 571, ["The board's readiness to make a finding so at odds with the record supports Ramirez's claim that his parole hearing was a sham"].

## XX.

The Board's denial of a parole date to Mr. Asbury is an example of a pattern and practice by the Board to deny parole to virtually all life and term-to-life inmates.  This is done notwithstanding their accomplishments and efforts at rehabilitation within the prison, thoroughly frustrating the mandate in *Penal Code* §3041, that parole "shall normally" be granted.  The former Chief Executive of this state, Governor Gray Davis, explicitly declared the policy of the executive branch in opposition to parole stating:

> They must not have been listening when I was campaigning…if you take someone else's life, forget it.  I think people dismiss what I said in the campaign as either political hyperbole or something that I would back away from…We are doing exactly what we said we were going to do.
> (See Exh. K, pp. 382-83.)

### *REQUEST FOR EVIDENTIARY HEARING*
### XXI.

The Board has adopted a practice of utilizing the regulatory criteria of unsuitability in a manner that renders them unconstitutionally vague.  An evidentiary hearing will be necessary to resolve the factual disputes on this point.  A simple test can

---

[12] Petitioner is requesting that this Court take Judicial Notice of the *Coleman* decision which is being cited as factual proof of this illegal policy, not as precedent authority.

be done in connection with an evidentiary hearing to illustrate the existence of the "no parole" policy and the vagueness of the regulations as they are currently being applied. This Court can order respondent to produce the decisions by the parole Board during the ninety (90) days before and after Mr. Asbury's hearing, along with the Governor's decisions regarding any case where parole was granted by the Board (or en banc decision or rulings by the Decision Review Unit as to any case that was subsequently reversed or modified), and as to any inmate that was released, any prior decisions of the Board denying parole as to that inmate. Petitioner anticipates that this evidence would show that in 100% of all murder cases, the crime has been found to be "especially heinous, atrocious, or cruel" at some point. Thus, as applied, the phrase would be violative of federal due process, in that it can fit any crime, and has lost the ability to distinguish crimes that truly are particularly egregious. This is precisely what the Santa Clara County Superior Court found in the cases of *In re Arthur Criscione, Case* # 71614, *In re Jamieson, Case* # 71194 *and In re Viet "Mike" Ngo, Case* # 127611, a copy of which is attached hereto as Exhibit N.[13] See generally the discussion of vagueness in §IV of the accompanying Points & Authorities.

### *SUPPORTING EXHIBITS*

### XXII.

Petitioner has concurrently lodged an Appendix with this Court containing the documents supporting this petition and the same are incorporated herein by reference as though set forth in full. The Appendix contains the administrative record of the proceedings before the Board. As Petitioner has previously noted, due to the voluminous nature of the documents relating to the executive branches illegal policies, Petitioner has chosen not to burden the Court. However, if an evidentiary hearing is ordered, or if the Court requests said documents, Petitioner is prepared to submit all supporting documents. These documents provide the factual basis supporting the claim for relief.

---

[13] Because these three cases were heard together for decision, the written opinions are nearly identical, and only the *Criscione* ruling is attached. The others are available and can be provided on request.

*PRAYER FOR RELIEF*

***WHEREFORE, Petitioner prays this Court to do the following:***

1.      Issue a writ of habeas corpus or order to show cause to the Warden, Governor and the Board of Parole Hearings to inquire into the legality of the Petitioner's incarceration;

2.      Order the Board to set a release date commensurate with the matrix defined for the circumstances of Petitioner's offense, or alternatively, order the Board to hold a new parole hearing within forty five (45) days, and if no new information is presented that establishes that Petitioner poses a present threat of future violence, to find Petitioner suitable for parole and set a release date;

3.      Conduct an evidentiary hearing if necessary to resolve any disputed factual issues, allow oral argument regarding the issues set forth herein, and after the hearing, issue an order directing the Board to act as set forth in paragraph 2, above;

4.      Allow Petitioner the opportunity to orally argue in support of petition;

5.      Grant a discharge free and clear of parole; and

6.      Grant such other and further relief as justice may require.

Respectfully Submitted,

DATED: 4/11/08

Respectfully Submitted,

LAW OFFICES OF PICONE & DEFILIPPIS

By: _____
STEVE M. DEFILIPPIS
Attorney for Petitioner
EDMUND ASBURY

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## *VERIFICATION*

I am the attorney for Petitioner in the above-entitled matter, and my practice is located in Santa Clara County.  Petitioner Edmund Asbury is currently in custody in Monterey County.  Additionally, I am personally familiar with the facts and circumstances underlying the present Petition, and for these reasons, I am providing this Verification in accordance with *Code of Civil Procedure* §446.  I have read the foregoing Petition for Writ of Habeas Corpus and know the contents thereof.  The same is true of my own personal knowledge, except as to those matters stated upon my information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct, executed this 11th day of April, 2008, in the City of San Jose, County of Santa Clara, State of California.

STEVE M. DEFILIPPIS